**Leroy JENKINS, Plaintiff–Appellee,**

**v.**

**Michael P. LANE, James A. Chrans, Michelle Clark, et al., Defendants–Appellants.**

**No. 90–2628.**

United States Court of Appeals, Seventh Circuit.

Argued Aug. 4, 1992.

Decided Sept. 24, 1992.

Thomas J. Verticchio, Robin L. Wolkoff (argued), Wildman, Harrold, Allen & Dixon, Roslyn C. Lieb, Chicago Lawyers' Committee, Chicago, Ill., for plaintiff-appellant.

Susan Frederick Rhodes, Asst. Atty. Gen. (argued), Office of the Atty. Gen., Chicago, Ill., for defendants-appellees.

Before CUDAHY and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

PER CURIAM.

Leroy Jenkins claims that his prison's library policy prevented adequate access to the courts. The district court dismissed Jenkins' 42 U.S.C. § 1983 suit on summary judgment, after finding no evidence that the policy caused injury. For the same reason, we affirm.

### I.

Jenkins is an inmate housed in the protective custody unit at the Pontiac Correc-tional Center (Pontiac). In an effort to separate protective custody inmates from inmates in its general population, Pontiac banned those in protective custody from its law library.[1] The inmates instead obtained legal help and materials by corresponding with library personnel and by consulting with inmate law clerks. This system operated with mixed results. Although Jenkins admitted that he received cases and research help from some clerks, he claimed that others extorted payment for their services. The library personnel also provided Jenkins with materials and usually aided him with requested research. The library, however, was slow and occasionally required exact citations to cases.

Jenkins complained about the library system to various prison officials, but they did nothing. He also filed a grievance with the Administrative Review Board, which ordered the prison to investigate the system. Finally, Jenkins sued the defendants under 42 U.S.C. § 1983, claiming that he was denied access to the courts. Jenkins also filed a motion to appoint counsel, which the court denied, finding that, although Jenkins' claim was colorable, it raised rather simple issues, which a person with Jenkins' intellectual abilities could understand and investigate.

After answering Jenkins' complaint, the defendants filed a motion for summary judgment, which they supported with a transcript from Jenkins' deposition. Jenkins responded to the summary judgment motion by filing a pro se "Plaintiff's Affidavit in Opposition to Defendants' Motion for Summary Judgment." The court interpreted this response as a motion to compel answers to Jenkins' discovery requests and consequently ordered the defendants to inform the court whether they had answered discovery. After the defendants proved that they had complied with all pending requests, the court granted summary judgment. The court's order held that even if the system at Pontiac violated the Constitu-

---

1. Since Jenkins filed this suit, Pontiac has opened its library to protective custody inmates, allowing them better access to legal texts.

tion, Jenkins could not prevail because he failed to show damages.

Jenkins appealed the court's decision and moved for the appointment of counsel on appeal. We granted the motion for counsel, appointing the attorneys who represented Jenkins at briefing and oral argument. We now consider the merits of Jenkins' appeal.

## II.

This court reviews *de novo* the district court's grant of summary judgment. *Hayes v. Otis Elevator Co.*, 946 F.2d 1272, 1277 (7th Cir.1991). When reviewing the decision, we must "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion." *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991). The opposing party, however, may not rest on the allegations in the pleadings; he must introduce affidavits and other evidence opposing the motion. *Billups v. Methodist Hosp. of Chicago*, 922 F.2d 1300, 1302 (7th Cir.1991). If this evidence reveals "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," this court will allow summary judgment. Fed. R.Civ.P. 56(c).

An inmate's access to the courts is the most fundamental of his rights; "all other rights of an inmate are illusory without it, being entirely dependent for their existence on the whim or caprice of the prison warden." *Adams v. Carlson*, 488 F.2d 619, 630 (7th Cir.1973). To prove a violation of this crucial right, an inmate must meet both prongs of a two-part test. *See De Mallory v. Cullen*, 855 F.2d 442, 448 (7th Cir.1988). Under the first prong, the inmate must show that prison officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Martin v. Davies*, 917 F.2d 336, 338 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2805, 115 L.Ed.2d 978 (1991). To

meet the second prong, the prisoner must generally show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of the plaintiff's pending or contemplated litigation." *Shango v. Jurich*, 965 F.2d 289 (7th Cir.1992). We however waive this showing of detriment where the prisoner alleges a direct, substantial and continuous, rather than a "minor and indirect," limit on legal materials. *De Mallory v. Cullen*, 855 F.2d 442, 448–49 (7th Cir.1988). This distinction is crucial in Jenkins' case, which the district court dismissed for the failure to meet the detriment prong.

This court has never formally defined the terms "direct, substantial and continuous" or "minor and incidental"; we have always proceeded on a case-by-case basis. In the *De Mallory* case, for instance, we found substantial and continuous limitations. The inmates in *De Mallory* were banned from the prison's law library and obtained books only upon written request. *Id.* at 449. The inmates could consult with attorneys from the Legal Assistance for Incarcerated Persons (LAIP) program and the Public Defender's Office, but neither group handled many conditions of confinement cases. *See id.* at 448. The inmate paralegals were also of little assistance. Prisoners could not personally meet with the paralegals; they could only correspond through the mail. *Id.* We found these limits substantial because they prevented inmates from performing preliminary legal research and formulating legal theories. *Id.* at 447.

In a more recent case, we found only minor and indirect limits. *See Shango*, 965 F.2d at 293. In *Shango* the prison allowed protective custody inmates to enter the library but limited their access to seven "study cells." *Id.*, 965 F.2d at 292. While in the study cells, the prisoners relied on resident legal clerks to provide materials. *Id.* Despite this indirect access to texts, we affirmed a verdict in favor of the prison, finding the system "at most an impingement" of meaningful access.

Although Jenkins' case shares characteristics with both *Shango* and *De Mallory*, Jenkins argues that it is closer to *De Mallory*. He suggests that we may distinguish the two lines of cases by considering only the type of resource withheld from the prisoner. Under Jenkins' system, a denial of "ancillary materials" such as pens and photocopying would amount to a minor and incidental limitation, while a denial of libraries or counsel would constitute a substantial deprivation.

We reject Jenkins' suggestion for several reasons. First, *De Mallory's* discussion of "direct, [substantial,] and continuous limitations on legal materials or counsel," requires us to consider the duration and degree, as well as the type, of limitation. Jenkins however focuses only on the resource denied without defining the terms "substantial and continuous." He addresses these concepts only by claiming that any regulation preventing personal access to a library substantially limits legal materials. This suggestion conflicts with our decision in *Shango*, where we found a minor limitation even though prisoners could not directly enter the library or withdraw books from the shelves. Jenkins' test also conflicts with our two-part analysis in legal access cases. The two-part test requires a defendant to show both prejudice and a constitutional violation. A constitutional violation occurs any time a prisoner is denied direct access to counsel or libraries. Because Jenkins suggests a nearly identical test for waiving prejudice, his standard would collapse our two prongs into one.

■ To avoid these problems, we define a "substantial and continuous" limitation as any restriction on counsel or legal materials that completely prevents the prisoner, or a person acting in the prisoner's behalf, from performing preliminary legal research. *See De Mallory*, 855 F.2d at 447 (the ability to perform preliminary research is a key factor in the decision); *Corgain v. Miller*, 708 F.2d 1241, 1248 (7th Cir.1983) (same). Although this standard is strict, it should address the policy concerns raised by legal access cases. Our cases waive prejudice for the most egregious legal access claims because a prisoner without any access to materials cannot determine the pleading requirements of his case, including the necessity of pleading prejudice. We recognize however that an inmate with even minimal legal resources could discover the prejudice requirement, a concept addressed in nearly all of our relevant cases.

■ Under our new standard, the restrictions at Pontiac were minor and incidental. Although Pontiac banned Jenkins from its library, it permitted clerks to personally meet with Jenkins and to research on his behalf. Some of these clerks, as well as the librarians, researched general areas of the law and provided Jenkins with relevant cases.[2] Because this assistance allowed Jenkins to learn the pleading requirements of his case,[3] he must plead prejudice.

■ Jenkins cannot prove that the prison prejudiced him by causing a delay or interruption in litigation. *See Shango*, 965 F.2d at 293. Although he alleges that the system prevented him from appealing two cases, he provides no proof of causation. He fails to show, for example, that the policy prevented him from obtaining caselaw. In fact, Jenkins admitted in his deposition that the library and clerk Jack Smith provided him all requested materials. At the time of the deposition, Jenkins' only

2. Although Jenkins admitted this in his deposition, at oral argument, the appellants claimed that Pontiac employed an "exact citation system" as in *Corgain v. Miller*, 708 F.2d 1241, 1250 (7th Cir.1983). We disagree with this characterization because although Jenkins was occasionally asked to provide exact citations for requested cases, he also received some research help from both the clerks and the librarians. The prison in *Corgain* provided no research help.

3. Jenkins attempts to dismiss the librarians and clerks by arguing that they lacked legal training, but such training is irrelevant at this stage of our analysis. Legal training is relevant to determining whether a prison has violated the constitution under part one of the two-part test, but not to deciding whether the prejudice requirement can be waived under part two. By determining that we will not waive part two of the test, we simply apply the general rule under § 1983, which prevents recovery without a showing of actual prejudice.

complaints involved unavailability of bound texts and the extortion by the paralegals. We do not understand how the book policy and the extortion caused him to lose his case when he could receive photocopied information directly from the library. *See Howland v. Kilquist,* 833 F.2d 639, 643 (7th Cir.1987) (no prejudice where conclusory claim that defendants prevented plaintiff from "adequately defend[ing] against the armed robbery charge and other litigation"). Finding no showing of detriment, we must affirm summary judgment.

■ As a final matter, Jenkins challenges the district court's refusal to appoint counsel. A district court may deny counsel after considering: (1) the strength of the plaintiff's claim, (2) the plaintiff's ability to investigate, (3) the complexity of the evidence, (4) the plaintiff's capabilities, and (5) the difficulty of the legal issues. *Maclin v. Freake,* 650 F.2d 885, 887–88 (7th Cir.1981). The decision to appoint counsel is within the district court's discretion, which we will not overturn absent some "fundamental unfairness." *Id.* at 886.

■ We find no unfairness in Jenkins' case. The district court decided that, although Jenkins raised a colorable claim, he was not entitled to counsel because of his intellectual abilities and the simplicity of the issues he raised. This decision is supported by the district court record. The pleadings show that Jenkins is an intelligent, college-educated man with the ability to understand and analyze caselaw. Such a plaintiff is capable of bringing a § 1983 action for the denial of access to the courts. Section 1983 cases are procedurally simple, and the caselaw dealing with access to the courts is manageable and relatively straightforward.

Jenkins disagrees, arguing primarily that his problems with the law library prevented him from researching his case. This claim is contradicted by Jenkins' own affidavit. In the affidavit, Jenkins admits that the library researched the legal access issue and provided Jenkins with caselaw.

### III.

We affirm the district court in all respects.