993 F.2d 1550
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Perry J. MCFARLAND, Plaintiff/Appellant,
v.
Timothy F. TODD, Richard Clark, James E. Aikens, et al.,
Defendants/Appellees.
 No. 92-1142.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 20, 1993.*
Decided May 10, 1993.
 
 Before COFFEY, FLAUM, and ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Perry J. McFarland, an inmate of the Westville Correctional Center, brought a civil rights action pursuant to 42 U.S.C. § 1983 against six employees of the Indiana Department of Correction. McFarland alleged that the defendants violated his constitutional rights by failing to provide an adequate law library, arbitrarily changing his security classification and transferring him to a higher security facility without due process of law, and retaliating against him for filing a civil rights complaint by searching his belongings and confiscating some of his legal papers. The district court granted the defendants' motion for summary judgment. McFarland filed a timely appeal. We affirm.
 
 I. BACKGROUND
 
 2
 On March 5, 1990, Perry J. McFarland submitted a civil rights complaint[1] against Richard Clark and Timothy F. Todd, claiming that their decision to consolidate the law library at the Lakeside Correctional Unit ("LCU") with the regular reading library made it impossible for McFarland to use the law library to work on two pending appeals. Because of the library consolidation, and because the defendants had failed to provide any alternative legal services, McFarland claimed that he was denied his constitutional right of access to the courts. On March 6, 1990, Todd and Timothy R. Sandy conducted an inspection of common areas of the LCU, which included a search of a large cabinet containing the personal belongings of McFarland and other inmates. Todd and Sandy removed certain items from the cabinet, including some they believed to be state-owned property.[2] On March 12, 1990, pursuant to a change in the criteria for determining the security classification of prison inmates in the Indiana Department of Correction, McFarland was found to be ineligible to remain at the LCU and was transferred to the Indiana State Prison.
 
 
 3
 The district court granted McFarland's motion for leave to file a supplemental complaint. In his supplemental complaint, McFarland added four new defendants, James Aikens, John Nunn, Norman Owens and Timothy R. Sandy. McFarland claimed that during the search of March 6, 1990, Todd and Sandy had confiscated some of his law books and legal pleadings pertaining to his pending criminal appeal, and that these materials had not been returned. He claimed that this had been done in order to harass him for filing his original complaint against Todd and Clark. He further alleged that he had been assigned a higher security classification and transferred from LCU in retaliation for filing this lawsuit and for assisting other inmates with legal work. He also claimed that by changing his security classification without just cause, defendants had violated his right to procedural due process.[3]
 
 
 4
 McFarland's subsequent motion for a temporary restraining order and preliminary injunction was denied. The defendants then moved for summary judgment. The district court considered supporting affidavits filed by McFarland and the defendants, as well as McFarland's traverse and memorandum of law in response to the motion. The court then entered summary judgment against McFarland. McFarland filed a timely appeal in which he raises the following claims: (1) he was denied access to the courts; (2) his legal papers were seized in violation of the Fourteenth Amendment; and (3) his belongings were searched and his legal papers were confiscated in retaliation for filing this lawsuit.
 
 II. ANALYSIS
 
 5
 We review de novo the district court's grant of summary judgment. Jenkins v. Lane, 977 F.2d 266, 268 (7th Cir.1992) (per curiam ). Although we view the record and all reasonable inferences that may be drawn from it in the light most favorable to McFarland, see id. (citing Karazanos v. Navistar Int'l Transp. Corp., 948 F.2d 332, 335 (7th Cir.1991)), McFarland may not merely rest on his pleadings. He must bring forward affidavits or other evidence showing that there is a genuine issue of material fact for trial which would preclude summary judgment. See id. Thus, "[t]he mere existence of a factual dispute will not bar summary judgment unless 'the disputed fact is outcome determinative under governing law.' " Howland v. Kilquist, 833 F.2d 639, 642 (7th Cir.1987) (quoting Egger v. Phillips, 710 F.2d 292, 296 (7th Cir.) (en banc ), cert. denied, 464 U.S. 918, 104 S.Ct. 284 (1983)). Moreover, Rule 56(c) of the Federal Rules of Civil Procedure "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).
 
 
 6
 A. Denial of access to the courts.
 
 
 7
 In order to prove that his right of access to the courts was violated, McFarland must meet both prongs of a two-part test. Jenkins, 977 F.2d at 268. He must show (1) that prison officials failed "to assist inmates in the preparation and filing of meaningful legal papers by providing [them] with adequate law libraries or adequate assistance from persons trained in the law," Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498 (1977), and (2) that the prison officials' conduct caused some detriment to his pending litigation. See Jenkins, 977 F.2d at 268; Shango v. Jurich, 965 F.2d 289, 291 (7th Cir.1992).
 
 
 8
 In his affidavit, McFarland states that the consolidation of the law library and the reading library at LCU made it impossible for him to continue doing legal work due to noise and a lack of space. He further states that some law books were placed in storage and were no longer available to inmates. As in Shango, these limitations are at most an impingement or an inconvenience, not a total abrogation of his right to meaningful access to legal materials. See Shango, 965 F.2d at 293. McFarland also states that Todd and Sandy confiscated and retained certain of his legal papers and books, including a transcript of post-conviction proceedings, and briefs pertaining to his direct appeal in state court and his federal habeas corpus petition. McFarland has not, however, brought forward any evidence tending to show that his pending litigation was delayed, interrupted, or otherwise prejudiced as a result of the actions of Todd and Sandy. See id.; Jenkins, 977 F.2d at 269 (plaintiff must show prejudice); Hossman v. Spradlin, 812 F.2d 1019, 1021-22 n. 2, 1022 (7th Cir.1987) (per curiam ) (same). Since McFarland has failed to meet his burden of proof on this prong of the test, entry of summary judgment was proper. See Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.
 
 
 9
 B. Deprivation of property without due process.
 
 
 10
 McFarland argues that Ind.Code §§ 11-11-2-3(b) & 11-11-2-4 (1982) create a protected property interest[4] in the legal papers and law books seized by Todd and Sandy, see Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989), and that he was deprived of his property without due process of law in violation of the Fourteenth Amendment. Even if we assume without deciding that the state law creates a protected property interest in these items, and that McFarland was intentionally deprived of them, the Due Process clause of the Fourteenth Amendment is not implicated by "an intentional deprivation by a prison employee where the state has provided a meaningful post-deprivation remedy for the loss." Hossman, 812 F.2d at 1023. See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204 (1984). Because Indiana provides a constitutionally adequate remedy to redress loss caused by prison officials, see Hossman, 812 F.2d at 1023, entry of summary judgment on this claim was likewise proper.
 
 
 11
 C. Retaliation for the exercise of a constitutional right.
 
 
 12
 McFarland's claim that Todd and Sandy acted in retaliation against him for filing his original complaint presents a closer question. "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper." Howland v. Kilquist, 833 F.2d at 644 (quoting Buise v. Hudkins, 584 F.2d 223, 229 (7th Cir.1978), cert. denied, 440 U.S. 916, 99 S.Ct. 1234 (1979)); see also Harris v. Fleming, 839 F.2d 1232, 1238 (7th Cir.1988); Matzker v. Herr, 748 F.2d 1142, 1150-51 (7th Cir.1984). It is undisputed that prisoners have a "fundamental constitutional right of access to courts," Matzker, 748 F.2d at 1151 (citing Bounds, 430 U.S. at 821, 97 S.Ct. at 1494), and that a prisoner may maintain an action for damages against prison officials who retaliate against him for exercising his right to seek judicial relief. Id. (citations omitted).
 
 
 13
 To make out a prima facie case of retaliation, however, it is McFarland who bears the burden of showing that retaliation was a motivating factor behind the defendants' conduct. See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 285-87, 97 S.Ct. 568, 575-76 (1977). If Todd and Sandy would have conducted the search of the cabinet containing McFarland's law books and papers and confiscated some of McFarland's belongings even if McFarland had not filed a civil rights complaint against Todd, then summary judgment is proper on this claim as well. See id. The fact that the search took place within several days after McFarland mailed his original complaint may raise a question as to whether retaliation might have played a role in motivating the search. See Cain v. Lane, 857 F.2d 1139, 1143 n. 6 (7th Cir.1988) (chronology may support inference of retaliatory animus); Murphy v. Lane, 833 F.2d 106, 108-09 (7th Cir.1987) (per curiam ) (same).
 
 
 14
 Several other facts, however, persuade us that this search was not motivated by retaliation. First, in their affidavits, defendants assert that the search was conducted in the common areas of LCU and was entirely routine. See Howland, 833 F.2d at 645 (transfer was routine, not retaliatory). Furthermore, the cabinet that was searched contained several compartments, one of which was marked as belonging to an inmate named "German." None of the compartments was identified as belonging to McFarland. Finally, Todd and Sandy confiscated materials which they reasonably believed were state property, such as a typewriter and office supplies. McFarland was later exonerated of unauthorized possession of these items, not because they were not state-owned, but because McFarland, as an inmate law clerk, was fully authorized to possess them and store them in the cabinet where they were found.[5] Several of the affidavits submitted by McFarland are from inmate witnesses who were present during the search, and contain the personal opinions or impressions of those inmates that Todd and Sandy intended to retaliate against McFarland by searching and confiscating his belongings. The affidavits do not, however, present facts that contradict the material facts as stated in the affidavits submitted by the defendants. See id. at 642 (disputed facts must be "outcome determinative"). Because McFarland has the burden of proof on this issue under Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 576, and has not brought forward sufficient facts to show that the search and confiscation were motivated by retaliation, this claim cannot survive defendants' motion for summary judgment. See Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.
 
 CONCLUSION
 The judgment of the district court is
 
 15
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 The complaint was accompanied by a motion for leave to proceed in forma pauperis, and was mailed on or about March 1, 1990. The district court determined that McFarland was able to pay a partial filing fee. McFarland then paid the fee and filed his complaint on June 15, 1990
 
 
 [2]
 At a subsequent disciplinary hearing, McFarland was found not guilty of unauthorized possession of state-owned property
 
 
 [3]
 On appeal, McFarland abandoned the claims pertaining to his security classification and transfer, apparently conceding that the changes were due to a prison-wide reclassification affecting all inmates
 In his reply brief, McFarland refers to certain pendent state claims that he argues were improperly dismissed. Even a liberal reading of his original and supplemental complaints fails to reveal the precise nature of these claims, and the district court did not address them. We note, however, that upon dismissal of a plaintiff's federal claims, a district court's relinquishment of jurisdiction over any remaining pendent state claims is proper. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 108 S.Ct. 614 (1988); United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139 (1966); see also Graf v. Elgin, Joliet & Eastern Ry. Co., 790 F.2d 1341, 1347 (7th Cir.1986) (district court's decision to relinquish pendent jurisdiction is "almost unreviewable").
 
 
 [4]
 In his brief, McFarland claims he has a "liberty interest" in the return of his law books and papers. We will construe his pro se pleadings liberally, see Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594 (1972), and assume that he asserts a property interest in the return of these items
 
 
 [5]
 McFarland claims that Todd and Sandy confiscated several of his legal papers pertaining to other cases, as discussed above in parts II.A. and B. As we have noted, the materials confiscated were stored in a cabinet containing the possessions of several inmates. None of the compartments in the cabinet was identified as belonging to McFarland, and no evidence was presented tending to show that Todd and Sandy knew that McFarland was authorized to store state-owned property in the cabinet. Under these circumstances, McFarland's legal papers were apparently confiscated in order to link him with possession of the state-owned property. Thus, in the absence of either prejudice to pending litigation or proof of retaliatory motive, any claim regarding these items must be brought under state law. See Hossman v. Spradlin, 812 F.2d 1019, 1023 (7th Cir.1987) (per curiam )