124 F.3d 205
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Aaron STEWART, Plaintiff-Appellant,
v.
Nancy SMITH, et al., Defendants-Appellees.
 No. 95-2752.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 30, 1997.
Decided Aug. 22, 1997.[1]
 
 Appeal from the United States District Court of the Northern District of Illinois, Western Division, No. 92 C 20372; Stanley J. Roszkowski, Judge.
 Before RIPPLE, ROVNER, and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Aaron Stewart believes that prison officials[2] were tired of his "jailhouse lawyer" activities, and retaliated against him by finding him guilty of possession of "hooch" (homemade alcohol) when it was actually tomato juice, sentencing him to segregation, denying him materials needed to pursue legal claims, and transferring him to another prison. In addition, Stewart claims that the prison librarian denied him the opportunity to work as a law clerk in retaliation for his filing grievances against her. Stewart filed this action pursuant to 42 U.S.C. § 1983. The district court granted summary judgment in favor of the defendants, and we affirm.
 
 
 2
 * On October 12, 1992, a disciplinary ticket was issued charging Stewart with possession of homemade liquor. Stewart was placed in segregation pending the disciplinary hearing. The disciplinary report reads:
 
 
 3
 [T]his CO along with Sergeant Hook conducted a routine shakedown on the above inmate's room. This CO along with Sergeant Hook found approximately two gallons of hooch on top of his closet. Captain Fisher notified.
 
 
 4
 The Committee found Stewart guilty of possession of hooch. Its report reads: "IDR was read. Stewart stated he was not guilty. He stated the substance found was sweet tomato juice." The Committee concluded: "Based on evidence on IDR, staff reports and investigative report. The Committee finds him guilty. Note this is resident's third ticket for Drugs and Drug Paraphernalia." The Committee recommended that Stewart (1) be transferred to a different prison; (2) receive one month of segregation; and (3) be demoted to "C" grade for one month. On November 4, 1992, Stewart was transferred to Centralia Correctional Center.
 
 
 5
 Stewart appealed to the Administrative Review Board of the IDOC. He appeared before the panel and stated "he has nothing to add to the documentation. However, he no longer wants to return to the Dixon Correctional Center." The Committee recommended that the grievance be denied; Peters, as Director of the IDOC, concurred.
 
 
 6
 Retaliatory Segregation and Transfer Claims
 
 
 7
 Under the facts presented in this case, Heck v. Humphrey, 512 U.S. 477 (1994), and Edwards v. Balisok, 117 S.Ct. 1584 (1997), bar the retaliatory segregation and transfer claims, since Stewart's disciplinary "conviction" for possession of alcohol has never been set aside. Edwards applies Heck to prison disciplinary cases. See also Miller v. Indiana Dep't of Corrections, 75 F.3d 330 (7th Cir.1996). The Court in Edwards held that challenges to prison disciplinary proceedings may[3] necessarily imply the invalidity of the board's judgment. 117 S.Ct. at 1587-88. The Court explained that even certain procedural defects would, if established, "necessarily imply the invalidity of the deprivation of [the inmate's] good-time credits." Id. at 1588. In Edwards, the inmate complained of the disciplinary board's denying him the opportunity to put on a defense through specifically identified witnesses who possessed exculpatory evidence," and went "even further, asserting that the cause of the exclusion of the exculpatory evidence was the deceit and bias of the hearing officer himself," because the hearing officer "lied about the nonexistence of witness statements." Id. at 1588.
 
 
 8
 Stewart makes similar allegations of bias in his retaliation claims. He also claims that the disciplinary charge was false, and brought in retaliation for his jailhouse lawyer activities. Proof of false allegations would undermine the validity of the disciplinary finding, much like Edwards ' deceit claims. Thus, these claims are not cognizable under § 1983 unless and until the disciplinary action has been expunged or overturned.
 
 Request for Witnesses
 
 9
 Stewart claims that he was denied due process when his request for witnesses at the disciplinary hearing was denied. The disciplinary committee asserted that no witnesses were requested by Stewart. For purposes of the summary judgment motion, the district court accepted plaintiff's version of the facts that he requested witnesses. However, the court concluded that since "Officer James prepared the disciplinary report which stated that he and Sgt. Hook found 'hooch' in plaintiff's cell," the committee could "disallow James' and Hooks' testimony as unnecessary, since their version of events was already available."
 
 
 10
 We need not decide whether the discipline imposed, a transfer to another prison, 30 days' segregation, and demotion to "C" grade, constitutes a significant and atypical hardship under Sandin v. Conner, 115 S.Ct. 2293 (1995). Even assuming arguendo that a viable liberty interest exists, the district court was correct in finding that, assuming that Stewart requested witnesses, the committee need not have called the two named witnesses since they had already submitted their written reports and their testimony would be cumulative.
 
 Hearing Delayed One Day
 
 11
 Stewart argues that his right to procedural due process was violated when the disciplinary hearing was held one day late. This is not a constitutional claim, and thus is not cognizable under 42 U.S.C. § 1983. See DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 202 (1989); Archie v. City of Racine, 847 F.2d 1211, 1216-17 (7th Cir.1988) (en banc ) ("Mere violation of a state statute does not infringe the federal Constitution."). Hewitt v. Helms, 459 U.S. 460, 472 (1983), only requires that a hearing be held "within a reasonable time" if the inmate is deprived of a cognizable liberty interest, and this "reasonable time" is based on federal constitutional law, not state law.
 
 
 12
 Retaliatory Denial of Prison Job as Law Clerk
 
 
 13
 Stewart also claimed that his due process rights were violated by not being permitted to apply for a law clerk position at Dixon, and by "other retaliatory acts by [defendant] Nancy Smith." Stewart alleges that when he arrived at Dixon, he repeatedly asked Smith for applications. She refused. Smith "falsely claimed that she never received his resume, and used the pretextual excuse that, because plaintiff was in segregation at the time of one of the job information meetings, that he was not considered for it." Stewart asserts in his affidavit: "I was not in segregation when Law Clerk applications were passed out; nor was I in segregation when the Law Clerk tests were given." Stewart alleges further that Smith was retaliating against him "because he had filed prior civil right suits against her relating to the operation of the library at the Dixon Correctional Center." All of these acts by Smith were allegedly in "wrongful retaliation for plaintiff having asserted filed [sic] prior lawsuits alleging violations of his constitutional rights."
 
 
 14
 Smith testified at her deposition that Stewart's name was on a list of people interested in a library position. She wasn't sure when he had spoken to her about a position. "I don't recall the sequence." However, at the time she "called people in to fill out applications he was in segregation, so was unable to participate." If she sent him a memo about the opening, which was routinely done for anyone on the list, "I think probably if he was [in] segregation I got the memo back." She was not sure of the dates that the application process took place, but she remembered that whenever it was--Stewart was in segregation. "That sort of stuck in my mind he was there." She added: "I don't have an application on file for him, so he never completed an application."
 
 
 15
 A prisoner has no right to a prison job under the federal constitution. But "an act in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for different reasons, would have been proper." Howland v. Kilquist, 833 F.2d 639, 644 (7th Cir.1987). Thus, prison officials cannot deny an inmate a job in retaliation for exercising his constitutional right to file grievances or lawsuits. See, e.g., Williams v. Meese, 926 F.2d 994, 998 (10th Cir.1991); Frazier v, Dubois, 922 F.2d 560, 561-62 (10th Cir.1990).[4]
 
 
 16
 In any event, Stewart has failed to state a chronology from which the court might infer Smith's retaliation against him. See Black v. Lane, 22 F.3d 1395, 1399 (7th Cir.1994). Moreover, Smith provided a reasonable, legitimate reason--the disciplinary record--why she would not consider hiring Stewart for the prison library job. Smith testified that as part of their evaluation of applicants, they "go back and look at their record and we evaluate their institutional behavior." She also testified: "[H]is being in segregation would be a negative indicator, and I believe when we looked at his institutional record he had been in segregation at his previous institution." Smith was not aware of his law-related course work, certificates, or prior experience.
 
 
 17
 Denial of Notary Services & Scribe Materials
 
 
 18
 Stewart claims that between July 9, 1991 to August 8, 1991, while he was in segregation, Smith "failed to honor requests by plaintiff for notarial service." Stewart's "requests for copies of legal decisions were also denied as were his requests for legal envelopes and ink pens." Stewart testified at his deposition that, while in segregation in July or August 1991, he "must have put in two requests for notary public." Smith counters in her testimony at a deposition that she found no records of Stewart requesting notary services while he was in segregation in July or August 1991.
 
 
 19
 Delay or denial of notary services may impinge a prisoner's access to court. The prisoner must show prejudice from the denial of such services. Jenkins v. Lane, 977 F.2d 266, 268-69 (7th Cir.1992). Similarly, the right of access to the courts requires that the prisoner have basic scribe materials, but the same prejudice requirement applies. Gentry v. Duckworth, 65 F.3d 555, 558 (7th Cir.1995).
 
 
 20
 Stewart testified that he needed a document notarized for a motion he was filing in the Central District of Illinois in a case entitled Stewart v. Jones. He did not get the document notarized until after he was released from segregation, which created a 30-day delay. Stewart testified that he was not sure if the delay caused the dismissal of his case.
 
 
 21
 The district court was correct in finding that Stewart did not show he suffered any prejudice by the "alleged acts, a necessary showing to support a claim of denial of access to the courts. Bruscino v. Carlson, 854 F.2d 162, 167 (7th Cir.1988)." See also Lewis v. Casey, 116 S.Ct. 2174, 2180-81 & nn. 2-3 (1996). Stewart has not argued that he could amend his complaint, or produce evidence, to show prejudice; nor do we find anything in the record which would indicate he suffered prejudice.
 
 
 22
 Accordingly, we AFFIRM the judgment of the district court.
 
 AFFIRMED
 
 
 [1]
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [2]
 Defendant Odie Washington was the warden at Dixon; Captain Richard D. Soulon was the reviewing shift commander; Lt. Enrique Cavasos was the assistant chairman of the Adjustment Committee; Nancy Smith was the head librarian; and Howard Peters was the Director of the Illinois Department of Corrections (IDOC)
 
 
 [3]
 Neither the Court in Edwards nor this court has held that all retaliation claims automatically call into question the validity of the prison disciplinary board's judgment. For example, an inmate might be able to show that prison officials typically overlook certain offenses, or usually do not enforce a particular rule, except in retaliation for an inmate's constitutionally protected activities
 
 
 [4]
 We do not intend to rule out the possibility that a prisoner might be denied a job as a prison law clerk on the reasonable ground that a court has found that the lawsuits he files are frivolous, since of course there is no constitutional right to file frivolous lawsuits