**Kevin KIRSCH and James Griffin, Plaintiffs,**

v.

**Major J.C. SMITH and Warden McCaughtry (In their individual and official capacities), Defendants.**

No. 94–C–474.

United States District Court, E.D. Wisconsin.

July 14, 1995.

Kevin Kirsch, pro se.

James Griffin, pro se.

Wis. Dept. Justice by Stepphen J. Nicks, Asst. Attorney General, Madison, WI, for defendants.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

In a May 19, 1994, decision and order, I granted the plaintiffs' request for leave to proceed in forma pauperis with their 42 U.S.C. § 1983 action. *Kirsch v. Smith*, 853 F.Supp. 301 (E.D.Wis.1994). The defendants were directed to answer the plaintiffs' complaint and to respond to the plaintiffs' request for a temporary restraining order or a preliminary injunction. I denied the plaintiffs' request for temporary relief in a decision and order dated December 5, 1994. Presently before the court are the parties' cross-motions for summary judgment.

On January 12, 1995, the defendants filed their motion for summary judgment. After three extensions of time, the plaintiffs responded. The plaintiffs have filed several motions: (1) motion for summary judgment [docket entry # 47]; (2) "motion to conform the complaint to the evidence (Rule 15(b), F.R.C.P.)" [docket entry # 48]; (3) "motion to take judicial notice (Rule 201, F.R.E.)" [docket entry # 49]; and (4) the plaintiffs' "motion to enforce order to compel" [docket entry # 59].

For the reasons set forth below, the defendants' motion for summary judgment and the plaintiffs' motion to conform their complaint to the evidence will be granted. The plaintiffs' application for injunctive relief and declaratory relief and all of the remaining motions presented by the plaintiffs will be denied or dismissed.

## I. BACKGROUND

The plaintiffs commenced this action with the filing of a complaint on April 29, 1994, asserting that the "ink tube policy," instituted by the defendants, violates their constitutional right of access to the courts. The ink tube policy is one whereby inmates confined in the punitive segregation unit at the Waupun Correctional Institution ["W.C.I."] are permitted to use only the plastic inner ink insert from a ballpoint pen for all legal and personal writing. The plaintiffs submitted a sample ink tube as exhibit A to their complaint.

In their complaint, the plaintiffs allege that they are both inmates in the W.C.I.'s punitive segregation unit "formally known as the Adjustment Center but commonly referred to as the 'Overlook Hotel' due to the deleterious effect that it has on the minds of staff and prisoners." However, Mr. Griffin has since been transferred to the Green Bay Correctional Institution, and Mr. Kirsch is not presently confined in the Adjustment Center.

The plaintiffs also allege that they are both involved in ongoing litigation concerning their conditions of confinement. Specifically, Mr. Kirsch claims that he is involved in *Kirsch v. Endicott*, No. 94–359 (Wis.Ct.App. 1994) and that he was jailhouse counsel to the plaintiff in *Santiago v. Ware, et al.,* No. 92–CV–3906 (Dane county circuit court). Mr. Griffin alleges that he is litigating *Griffin v. McCaughtry, et al.,* No. 94–C–247–C (W.D.Wis.1994).

As a result of the ink tube policy at W.C.I., the plaintiffs claim that they are unable to pursue their pending litigation and administrative proceedings because they are unable to grip the ink tube and write legibly. They charge that they are unable to make carbon copies using an ink tube and that previous hand injuries make writing with the tube painful. The plaintiffs contend that the ink tube policy deprives them of meaningful access to the courts.

Along with their complaint, plaintiffs submitted a motion for temporary injunctive relief; they sought an injunction prohibiting the defendants from punishing them for modifying their ink tubes, or, in the alternative, ordering the defendants to provide them with proper pens. The plaintiffs also requested injunctive relief preventing the defendants from transferring them from the W.C.I. The plaintiffs' motion for temporary relief, construed by the court as a motion for a preliminary injunction, was denied in a December 5, 1994, decision and order. In addition, among other relief, the plaintiffs have requested damages, declaratory relief and permanent injunctive relief prohibiting the defendants from enforcing the ink tube policy.

■ The plaintiffs are suing the defendants, who are state officials, "in their individual and official capacities." An action against state officials in their official capacities is no different from an action against the state itself. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Because damage actions against the state (absent its consent) are barred by the Eleventh Amendment, to the extent that the plaintiffs are seeking damages from the defendants in their official capacities, such claims are barred by that amendment. *Knox v. McGinnis,* 998 F.2d 1405, 1412 (7th Cir.1993).

## II. PLAINTIFFS' REQUEST FOR INJUNCTIVE AND DECLARATORY RELIEF

■ As part of their requested relief, the plaintiffs seek a permanent injunction enjoining the defendants from enforcing the ink tube policy and requiring the defendants to permit the plaintiffs to use a pen with a barrel. Unlike a claim for damages, a claim for prospective injunctive relief against a state official is properly asserted against that official in his official capacity. *Akins v. Board of Governors of State Colleges and Universities,* 840 F.2d 1371, 1377 (7th Cir.), *vacated,* 488 U.S. 920, 109 S.Ct. 299, 102 L.Ed.2d 319 *on remand,* 867 F.2d 972 (7th Cir.1988) (reinstating original judgment as to named plaintiff).

■ However, Mr. Griffin's application for injunctive relief is moot because he is no longer incarcerated at the W.C.I. Absent some evidence that he is likely to return to the W.C.I., Mr. Griffin is not entitled to such relief. *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (A § 1983 plaintiff must show a likelihood of future injury where he is seeking injunctive relief based upon past exposure to illegal conduct). In *Robinson v. City of Chicago,* the seventh circuit court of appeals held that the *Lyons* rule applies to claims for declaratory relief. 868 F.2d 959, 966–67 (7th Cir.1989), *cert. dismissed,* 493 U.S. 1012, 110 S.Ct. 708, 107 L.Ed.2d 729 (1989), *and cert. denied,* 493 U.S. 1035, 110 S.Ct. 756, 107 L.Ed.2d 773 (1990). Therefore, the same analysis applies to Mr. Griffin's request for declaratory relief.

Mr. Griffin has not demonstrated that he is likely to return to the W.C.I., and thus he does not have standing to obtain injunctive or declaratory relief. Consequently, the only relief which Mr. Griffin may be entitled to recover through this action is damages from the defendants in their individual capacities.

■ Mr. Kirsch, though still incarcerated at the W.C.I., is no longer confined in the Adjustment Center at that institution. Therefore, Mr. Kirsch must show that there is a likelihood that he will return there in the future in order to be entitled to injunctive or declaratory relief. Although Mr. Kirsch has been confined in the Adjustment Center for periods of time in eight out of the ten years of his confinement at the W.C.I., *see Second Kirsch aff.* at ¶ 2, the mere possibility that he will be returned to such confinement does not establish his entitlement to injunctive or declaratory relief. *See Knox,* 998 F.2d at 1413. Despite Mr. Kirsch's previous periods of confinement in the Adjustment Center, the court declines to assume that he will not abide by prison rules and again will be confined to that unit. *Id.* (Inmate's placement in program segregation twice during his four years of confinement deemed insufficient to show likelihood of his future placement in segregation). Therefore, Mr. Kirsch's request for injunctive relief is moot.

My resolution below of all of the plaintiffs' claims in favor of the defendants provides an additional basis for my denial of the plaintiffs' request for declaratory and injunctive relief.

### III. PLAINTIFFS' MOTION TO AMEND THEIR COMPLAINT

■ The plaintiffs seek leave to "conform the complaint to the evidence." In this motion, the plaintiffs state that certain issues raised in their motion for summary judgment "involve facts and legal claims not specifically referred to in the original civil complaint." Specifically, the plaintiffs ask that the court permit them to amend their complaint to assert claims that the ink tube policy violated their "First Amendment right to petition" and that the ink tube policy violates their state created property interests. The plaintiffs' pro se motions must be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972).

The plaintiffs' motion to conform their complaint was filed pursuant to Rule 15(b), Federal Rules of Civil Procedure. Under Rule 15(b), a party may seek leave to amend the pleadings to conform such pleadings to the issues raised in an action "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties."

It does not appear that the plaintiffs are attempting to amend their pleadings to conform to the evidence. Rather it appears that they are attempting to amend their complaint to add new claims. Rule 15(b) addresses the amendment of pleadings when new *issues* are raised by the evidence. Nevertheless, I will address the plaintiffs' additional claims in conjunction with my resolution of the parties' motions for summary judgment.

### IV. PLAINTIFFS' MOTION TO TAKE JUDICIAL NOTICE

■ In this motion, the plaintiffs, pursuant to Rule 201, Federal Rules of Evidence, ask the court to take judicial notice of the "fact" that

[i]t would be less of a security concern in the Adjustment Center for Adjustment Center inmates to openly use their modified ink tube for writing purposes only than to have those inmates surreptisiously [sic] manufacture and surreptisiously [sic] use their modified ink tube.

The plaintiffs assert that the aforementioned "fact" is one which is based upon common sense and "therefore is generally known within the jurisdiction of this Court."

Pursuant to Rule 201(b), Federal Rules of Evidence, a court may take judicial notice of a fact that is

not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

A court may take judicial notice of a fact at the summary judgment stage. *See St. Louis Baptist Temple v. Federal Deposit Insurance Corporation*, 605 F.2d 1169, 1171–72 (10th Cir.1979).

However, the plaintiffs' "fact" is really a conclusion, which must be supported with evidence. In addition, it is subject to reasonable dispute, and it is not a fact which is either generally known within this court's jurisdiction or capable of accurate and ready determination through resort to reliable sources. Therefore, the plaintiffs' "motion to take judicial notice" will be denied.

### V. THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

In their motion for summary judgment, the defendants assert that there are no genuine issues of material fact and that they are entitled to summary judgment in their favor. Specifically, they urge that the ink tube policy has not deprived the plaintiffs of their constitutional right to meaningful access to the courts, and, that to the extent that the ink tube policy infringes upon the plaintiffs' right of access to the courts, it is justified in light of prison security concerns. They also claim that they are entitled to qualified immunity from the plaintiff's claims.

The plaintiffs have filed a motion for summary judgment on the issue of liability. They argue that the undisputed facts of this case establish the defendants' liability for their claims.

## A. Summary Judgment Standard

██ Pursuant to rule 56(c), Federal Rules of Civil Procedure, summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Material facts are those that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment will not lie where there is a genuine issue of material fact. *Id.*

██ The movant bears the initial burden of establishing that there is no genuine issue of material fact. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The adverse party must then come forward with specific facts showing that there is a genuine issue for trial. *Id.;* Rule 56(e), Federal Rules of Civil Procedure. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1363 (7th Cir.1988). At the summary judgment stage the court must draw all reasonable inferences in favor of the non-moving party and cannot weigh the evidence to determine the truth of the matter. *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2510. However, the adverse party cannot rely upon conclusory allegations to defeat the motion. *Hedberg v. Indiana Bell Telephone Co., Inc.,* 47 F.3d 928, 931 (7th Cir.1995).

## B. Facts

At all times relevant to this action, defendant Smith was employed at the W.C.I. holding the rank of major. *Complaint* at p. 2; *Answer* at ¶ 3. At all times relevant to this action, defendant McCaughtry was the warden at the W.C.I. *Complaint* at p. 2; *Answer* at ¶ 3. Plaintiffs were, at the commencement of this action, incarcerated at the W.C.I. and were confined to the Adjustment Center in the W.C.I. *Complaint* at p. 2 and ¶ 5.

On February 10, 1994, the W.C.I. instituted the following policy:

> Effective immediately, any inmate being placed in the Adjustment Center will be issued the *insert* of a pen ONLY. Regular pens and pencils will no longer be allowed.

*Defendants' Proposed Findings of Fact ["DPFF"]* at ¶ 1; *Affidavit of Cindy O'Donnell ["O'Donnell aff."]* at ¶ 3. An ink tube is the plastic inner insert of a ballpoint pen that contains the ink of such pen. *Plaintiffs' Proposed Findings of Fact ["PPFF"]* at ¶ 8. While inmates are prohibited from modifying the pen inserts to stiffen them, they can cushion their thumb or writing finger with tissue or other material during use. *DPFF* at ¶ 9; *O'Donnell aff.* at ¶ 12. The status of inmates who are confined in the Adjustment Center at the W.C.I. may be temporary lockup, observation, controlled segregation, adjustment segregation, program segregation or administrative confinement. *DPFF* at ¶ 3; *O'Donnell aff.* at ¶ 3.

While they were subjected to the ink tube policy, both plaintiffs were attempting to pursue litigation challenging their conditions of confinement. *PPFF* at ¶ 9; *Second Affidavit of Kevin Kirsch ["Second Kirsch aff."]* at ¶ 4; *Affidavit of James Griffin ["Griffin aff."]* at ¶ 3. On August 1, 1994, Mr. Kirsch successfully submitted a Wisconsin court of appeals brief and appendix in Case No. 94–0359. *DPFF* at ¶ 10; *Affidavit of Gwen P. Feit* at ¶ 4. Mr. Kirsch requested extensions of time to file his brief in that case. *PPFF* at ¶ 19; *Affidavit of Kevin Kirsch ["Kirsch aff."]*, exhibit 4. Mr. Kirsch does not presently represent the plaintiff in *Santiago v. Ware, et al.,* Case No. 92–CV–3906 (Dane county circuit court). *DPFF* at ¶ 12; *Affidavit of Stephen J. Nicks ["Nicks aff."]* at ¶ 3. During the time that Mr. Kirsch acted as Mr. Santiago's representative, Mr. Kirsch filed a notice

of appearance, interrogatories and a request for the production of documents on Mr. Santiago's behalf. *DPFF* at ¶ 13; *Nicks aff.* at ¶ 4. At no time during his representation of Mr. Santiago did Mr. Kirsch inform the state court of any difficulty submitting legal work due to the ink tube policy. *DPFF* at ¶ 14; *Nicks aff.* at ¶ 5.

Mr. Kirsch was confined in the adjustment center from March 22 to November 23, 1994, and from January 11 to April 2, 1995. *PPFF* at ¶ 16; *Second Kirsch aff.* at ¶ 10. Mr. Griffin was confined there from March 22 to June 6, 1994. *PPFF* at ¶ 17; *Affidavit of James Griffin ["Griffin aff."]* at ¶ 8. In 1993, Mr. Kirsch suffered fractures to both of his hands. *PPFF* at ¶ 36; *Defendants' admission* no. 34. Mr. Kirsch's hands were set and placed in casts. *PPFF* at ¶ 37; *Kirsch aff.* at ¶ 15. X-rays taken of his hands during follow-up visits to Dr. Alan Breed of the University of Wisconsin Hospital Clinics in Madison, showed that the fractured bones fused together unevenly. *PPFF* at ¶ 37; *Kirsch aff.* at ¶ 15.

## C. Analysis

Prison inmates have a constitutional right of access to the courts that requires prison officials to assist inmates in the preparation and filing of meaningful legal papers "by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). Indigent inmates must be provided with paper and pen to draft legal documents. *Id.* at 824, 97 S.Ct. at 1496.

To demonstrate a violation of the constitutional right of access to the courts, an inmate must satisfy both prongs of a two-part test. *Jenkins v. Lane*, 977 F.2d 266, 268 (7th Cir.1992). Under part one, the inmate must show that prison officials failed to assist him in the preparation of meaningful legal materials by failing to provide adequate access to law libraries or adequate assistance from persons trained in the law. *Id.* Under the second prong, the inmate must show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of the plain-

tiff's pending or contemplated litigation." *Shango v. Jurich*, 965 F.2d 289, 292 (7th Cir.1992).

The quantum of detriment requirement is waived where an inmate "alleges a direct, substantial and continuous, rather than a 'minor and indirect' limit on legal materials." *Jenkins*, 977 F.2d at 268 (citing *DeMallory v. Cullen*, 855 F.2d 442, 448–49 (7th Cir.1988)). A substantial and continuous limitation is one that completely prevents a prisoner, or someone acting on the prisoner's behalf, from performing even preliminary legal research. *Jenkins*, 977 F.2d at 269.

In this case, the plaintiffs are not challenging their access to legal assistance or law libraries. They are challenging their access to legal supplies. With respect to the requirement that prison officials provide inmates with paper and pen, it is not clear what constitutes a "pen." In ordinary usage, a pen is "an implement for writing or drawing using ink or a similar fluid." *Webster's Third New International Dictionary* (1966). While a full pen is ordinarily a mere convenience, where an inmate is prevented, due to a medical condition, from submitting meaningful legal documents without such an instrument, a typewriter or a full pen may be a necessity. *See Canell v. Bradshaw*, 840 F.Supp. 1382, 1391 (D.Or.1993).

### 1. Mr. Griffin's Access to Courts Claim

Mr. Griffin asserts that his constitutional right of access to the courts has been violated by the ink tube policy. In response to the defendants' motion for summary judgment, he avers that the policy prevented him from pursuing contemplated litigation, including claims under the Eighth Amendment related to prison conditions, because he was unable adequately to write with an ink tube. *Griffin aff.* at ¶¶ 3–4. He states that he could not grip the tube well and that writing with the tube resulted in pains, aches and cramps in his writing hand due to previous hand injuries. *Id.* at ¶¶ 4–5.

Mr. Griffin's statements that his "previous hand injuries" inhibited his ability to write using an ink tube are conclusory. He has failed to provide any specific evidence of the

injuries which he claims impaired his writing ability. In response to a motion for summary judgment, a plaintiff must provide appropriate evidence to support his claims. *Howland v. Kilquist,* 833 F.2d 639, 642 (7th Cir.1987). He may not rely upon mere allegations in his pleadings or conclusory statements in affidavits. *Id.* In my opinion, Mr. Griffin has failed to provide evidence that the ink tube policy limited his constitutional right of meaningful access to the courts.

Assuming, for purposes of this motion, that Mr. Griffin **has** satisfied the first prong of the two part access to courts test, he has failed to meet the second prong requiring a showing of detriment. Beyond his conclusory assertion that the ink tube policy prevented him from pursuing various litigation, including a challenge to his conditions of confinement at the W.C.I., Mr. Griffin has provided no specific factual allegations to support that assertion. He has provided no evidence of court dates missed, inability to make timely filings, denial of legal assistance or of loss of a case which could have been won. *Martin v. Davies,* 917 F.2d 336, 340 (7th Cir.1990), *cert. denied,* 501 U.S. 1208, 111 S.Ct. 2805, 115 L.Ed.2d 978 (1991). Consequently, Mr. Griffin has failed to provide evidence of prejudice as he is required to do at the summary judgment stage. *See Hossman v. Spradlin,* 812 F.2d 1019, 1022 (7th Cir.1987). The defendants are entitled to summary judgment on his access to court claim.

### 2. Mr. Kirsch's Access to Courts Claim

Mr. Kirsch claims that the ink tube policy violates his right of meaningful access to the courts due to fractures he sustained to his hands and the subsequent uneven fusing of those fractures. He claims that the thinness of the tube prevents him from writing legibly and that he is able to write only by utilizing a modified ink tube.

#### a. Access to Courts

■ Prison officials have an affirmative duty to provide inmates with reasonable access to the courts. *DeMallory,* 855 F.2d at 446. They must demonstrate the adequacy of the means provided. *See id.* However,

reasonable access does not mean unlimited access. *Hossman,* 812 F.2d at 1021. "Inconvenient or even highly restrictive regulations" are valid so long as meaningful access is not denied. *Id.* Prison officials may impose limitations on an inmate's right of access to the courts where such limitations are justified by prison security concerns. *Shango,* 965 F.2d at 292; *Caldwell v. Miller,* 790 F.2d 589, 606 (7th Cir.1986); *see Jeffries v. Reed,* 631 F.Supp. 1212, 1215 (E.D.Wash. 1986) (Cutting down barrels of pens deemed justified in light of prison officials' security concerns).

■ While a full-size pen is ordinarily a mere convenience, where a prisoner claims that he is unable to write using a modified writing implement, a full-size pen may be a necessity. *Canell,* 840 F.Supp. at 1392. Mr. Kirsch has provided some evidence suggesting that he had difficulty writing with an ink tube due to previous hand injuries.

■ In a conclusory manner, Mr. Kirsch avers that the ink tube policy imposed a substantial and continuous limitation upon his ability to access the courts. If the policy did prevent Mr. Kirsch from performing preliminary legal research, the requirement of showing detriment would be waived. *Jenkins,* 977 F.2d at 269. Preliminary legal research is research which is necessary to determine the pleading requirements of one's case. *Id.*

I do not believe that the policy prevented Mr. Kirsch from performing such research. Mr. Kirsch does not allege that the ink tube policy kept him from determining the pleading requirements of his case. He does not claim that he did not have access to a law library while confined in the adjustment center at the W.C.I. While a writing instrument may be necessary to performing preliminary legal research, the amount of writing involved in performing such research is minimal. If the ink tube policy completely prevented Mr. Kirsch from drafting legal documents, a substantial and continuous limitation may be present. However, Mr. Kirsch claims only that writing with the ink tube restricted his ability to draft documents;

without more, this does not constitute a substantial and continuous limitation.

Mr. Kirsch was obliged to present some evidence to show that he was prejudiced by the alleged deprivation. Mr. Kirsch's only non-conclusory allegation of prejudice is his assertion that he had to obtain extensions of time to submit his appellate brief in Wisconsin court of appeals case number 94–0359 because of his inability to draft legal documents using an ink tube.

Attached to Mr. Kirsch's affidavit in support of the plaintiffs' motion for temporary relief (as exhibit four) are four orders entered in that case by the Wisconsin court of appeals prior to Mr. Kirsch's submission of his appellate brief. Only one of those orders mentions Mr. Kirsch's alleged difficulty due to the ink tube policy. However, that order also discloses that Mr. Kirsch was granted a two-week extension to submit his appellate brief.

Mr. Kirsch does not contend that the ink tube policy prevented him from seeking an extension of time to file his brief. He does not claim that the Wisconsin court of appeals refused to accept his brief when it was filed, nor does he claim that he suffered any adverse decision in that case due to the effects of the ink tube policy. As such, Mr. Kirsch has not shown that he suffered any prejudice as a result of the ink tube policy. *See Eason v. Nicholas,* 847 F.Supp. 109, 113 (C.D.Ill. 1994) (Brief delay in filing jurisdictional statement in appeal did not constitute prejudice); *Martin v. Lane,* 766 F.Supp. 641, 646 (N.D.Ill.1991) (Late filing of motion papers due to restriction on access to law library deemed insufficient showing of prejudice); *Geder v. Roth,* 765 F.Supp. 1357, 1359 (N.D.Ill.1991) (Plaintiff failed to show prejudice where he was granted extensions of time to comply with filing deadlines). I find that Mr. Kirsch has not provided any evidence to show that he was denied access to the courts because of the ink tube policy.

In an attempt to circumvent this deficiency, Mr. Kirsch claims that he was able to gain access to the courts only by covertly utilizing ink tubes which he modified to create a stiff barrel. He asserts that using a modified ink tube placed him at risk of severe discipline, in the form of additional time spent in segregation, loss of exercise privileges and being allowed only a crayon with which to write. However, Mr. Kirsch is allowed an alternative means of utilizing an ink tube which does not involve the creation of a stiff barrel. As stated above, he is permitted to cushion his fingers with "tissue or other material" while writing with an ink tube.

Mr. Kirsch claims that he has attempted to write using this alternative method. He contends that he is unable adequately to write using "tissue" as a means of cushioning his fingers and that aches and pains in his hand force him to stop writing. However, Mr. Kirsch has not presented any evidence to show that his injuries prevent him from writing with an ink tube while cushioning his fingers with "other materials."

Regardless whether Mr. Kirsch did in fact violate the ink tube policy in his communication with the courts, he is given an alternative means of communication which does not require violation of the policy. As stated above, he has not asserted that he is unable to write while using an ink tube cushioned with "other materials." Mr. Kirsch's conclusory statements that this alternative is not a viable alternative are insufficient to support his claim. Consequently, his argument that violation of the ink tube policy was his only means of gaining access to the courts is not persuasive.

Mr. Kirsch also claims that he was unaware of the alternative until after the commencement of this action. This argument is meritless as Mr. Kirsch has not provided any evidence that his lack of knowledge of the alternative would have affected his decision to utilize a modified ink tube. Mr. Kirsch has stated that he considers the alternative an unacceptable one.

 Assuming, arguendo, that the defendants' ink tube policy did infringe on Mr. Kirsch's right of access to the courts to some degree, I believe the infringement was justified by security concerns. Where a prison regulation infringes on an inmate's constitutional rights, that regulation is valid where it is reasonably related to a legitimate penological interest. *Turner v. Safley,* 482 U.S. 78,

89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). The *Turner* test applies to prison policy decisions as well as prison regulations. *Siddiqi v. Leak,* 880 F.2d 904, 909 (7th Cir. 1989). Prison officials must come forward with specific evidence to show that the limitation is necessary for security purposes and must show that less restrictive measures are insufficient. *See DeMallory,* 855 F.2d at 448.

In this case, the defendants assert that, based upon the violent nature of inmates confined in the Adjustment Center at the W.C.I., and in particular Mr. Kirsch, the ink tube policy is justified by their security concerns. They claim that a pen could easily be used as a weapon by inmates in attacks upon prison staff. The defendants have submitted evidence to show that Mr. Kirsch has a deplorable disciplinary record during his confinement at W.C.I. Between January 1, 1994, and August 31, 1994, he received thirty-four conduct reports, including ten reports for threatening staff and four reports for battering staff. In one incident, which occurred in December 1993, Mr. Kirsch struck a prison guard in the face with his closed fist and kicked the guard in the head after he had fallen to the floor.

In *Turner,* the Supreme Court outlined four factors which may be considered in addressing the reasonableness of a prison regulation which legitimatizes some infringement on an inmate's constitutional rights. 482 U.S. at 89–90, 107 S.Ct. at 2261–62. These factors are: (1) whether there is a valid, rational connection between the regulation at issue and the legitimate governmental interest put forward to justify it; (2) the reasonableness of the restriction; (3) the impact that accommodation of the asserted constitutional right will have on prison staff; and (4) the absence of ready alternatives. *Id.* In examining the defendants' asserted interest in security "[j]udges should be cautious about disparaging disciplinary and security concerns expressed by the correctional authorities." *Keeney v. Heath,* 57 F.3d 579 (7th Cir.1995).

i. Is there a rational connection between the ink tube policy and prison security?

The defendants have shown that there is a legitimate connection between the

ink tube policy and the state's interest in the safety of prison staff. They have submitted evidence that the Adjustment Center is home to some of the most violent individuals incarcerated at the W.C.I., including Mr. Kirsch. Providing Mr. Kirsch with an implement, such as a full pen, which could easily be used as a weapon would put prison staff at significant risk of harm.

The defendants have not submitted any evidence to show that Mr. Kirsch has actually utilized a pen as a weapon. However, I do not believe that they are required to wait until the occurrence of such an event to justify implementation of the ink tube policy. As Dr. Hannibal Lechter demonstrated in *The Silence of the Lambs,* even a seemingly innocent tool can be turned into a deadly weapon. This court is unwilling to second-guess the prison's concern for security in this regard. In my opinion, there is a valid, rational connection between the ink tube policy and proper penological protections.

ii. Reasonableness of the restriction

The ink tube policy is a reasonable restriction on Mr. Kirsch's right of access to the courts. It does not deprive him of a writing implement. Mr. Kirsch is in fact provided with a writing instrument, although it is different than the one which he would prefer. The restriction does not foreclose Mr. Kirsch's right of access to the courts. As discussed above, Mr. Kirsch is provided with an alternative means of utilizing an ink tube by cushioning his fingers with tissue or other material while writing. He has not provided evidence to show that this alternative was inadequate. I find that the prison's policy is a reasonable restriction.

iii. Impact of accommodation on prison staff

Granting Mr. Kirsch's request for a full pen, or permitting him to modify an ink tube by creating a rigid barrel, would have an adverse impact on prison staff; it would provide him with an instrument which could readily be used as a weapon. The requested accommodation would have a deleterious impact on prison staff.

#### iv. Absence of ready alternatives

There are no ready alternatives to the ink tube policy. The only alternatives would be to provide Mr. Kirsch with a full pen or to permit him to modify the ink tube to create a stiff barrel. Such alternatives would nullify the goal of the ink tube policy, namely to prevent inmates such as Mr. Kirsch from possessing an implement which could be used as a weapon. Mr. Kirsch has an alternative, as discussed above, although it is not an alternative which he prefers.

Considering all of the factors elicited in *Turner,* I believe that the ink tube policy is a reasonable impingement on Mr. Kirsch's right of access to the courts. In so finding, I do not conclude that the policy is reasonable as applied to all inmates confined in the W.C.I.'s Adjustment Center. The defendants have not shown that the policy is justified for all inmates confined in the Adjustment Center, and that issue is not before the court. However, the defendants have come forward with evidence to show that the limitation is necessary for security purposes as applied to Mr. Kirsch.

#### b. Qualified immunity

■■■■ With respect to the plaintiffs' request for damages, an additional basis supporting my granting the defendants' summary judgment motion is their entitlement to the protection of qualified immunity. Qualified immunity shields government officials from liability for damages insofar as their conduct does not violate clearly established constitutional rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "Even defendants who violate constitutional rights enjoy qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard." *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984). Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Whether a defendant is entitled to qualified immunity is a question of law. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

■■■■ Clearly established rights sufficient to defeat a claim of qualified immunity are "those which are 'sufficiently clear that a reasonable official would understand that his actions violate that right.'" *McGrath v. Gillis,* 44 F.3d 567, 570 (7th Cir.1995) (quoting *Marshall v. Allen,* 984 F.2d 787, 792 (7th Cir.1993)). Such rights may be defined in closely analogous cases. *Kompare v. Stein,* 801 F.2d 883, 887 (7th Cir.1986). "[U]ntil a particular constitutional right has been stated so that reasonably competent officers would agree on its application to a given set of facts, it has not been clearly established." *Henderson v. DeRobertis,* 940 F.2d 1055, 1059 (7th Cir.1991), *cert. denied,* 503 U.S. 966, 112 S.Ct. 1578, 118 L.Ed.2d 220 (1992). The right must be a particularized right, as opposed to a more general right, such as the right to due process. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

■■■■ It was clearly established at the time of the conduct in question in this action that prison officials were obligated to provide inmates with reasonable access to the courts and with pen and paper to draft legal documents. *See Bounds,* 430 U.S. at 828, 97 S.Ct. at 1498. However, it was not clearly established that prison officials were obligated to provide inmates with any particular type of writing implement. This court is not aware of any closely analogous cases which would put the defendants on notice that their conduct in implementing the ink tube policy was unconstitutional. *Cf. Allen v. Sakai,* 48 F.3d 1082, 1089–90 (9th Cir.1994 (prison officials not entitled to qualified immunity for failure to provide inmate with a pen where inmate's notice of appeal was required under court rules to be completed in black ink and officials conceded that the black ink requirement was "clear and explicit."). I believe that the defendants are entitled to the protection of qualified immunity from the plaintiffs' claims for damages.

#### 3. The Plaintiffs' Property Interest Claim

■■■■ In order to state a valid claim based upon an alleged deprivation of a pro-

tected property interest, one must demonstrate that he has a legitimate interest that is established by the Constitution or state law. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The plaintiffs contend that the Wis.Admin.Code (DOC §§ 303.69(2) and 303.70(2)), provides that inmates placed in adjustment and program segregation shall be provided with a pen upon request. The plaintiffs urge that the regulations create a property interest in a *full* pen.

Assuming that the state regulations at issue do create a property interest, the plaintiffs have not submitted any evidence to show that the defendants deprived them of that interest. Although the regulations mandate the provision of a pen, they do not require the provision of any particular type of pen. Mr. Kirsch argues to no avail that the word "pen" as used in the state regulations at issue means a "full pen." While there may be situations in which a writing instrument is inadequate under the regulations, such as the provision of a "stick dipped in ink" as suggested by Mr. Kirsch, so long as the instrument provided maintains its ability to transfer ink to paper in a reasonable manner, the instrument complies with the regulation. The plaintiffs' property interest claim is without merit, and the defendants will be granted judgment in their favor on that claim.

### 4. The Plaintiffs' First Amendment Claim

■ The plaintiffs assert that the ink tube policy infringed on their First Amendment rights by preventing them from filing administrative complaints through the W.C.I.'s prison grievance program. I will assume, for purposes of this motion, that Wisconsin regulations do create such a right. For the same reasons that I conclude that the ink tube policy did not wrongfully infringe on the plaintiffs' right of access to the courts, I also conclude that the policy does not prohibit them from utilizing the prison grievance system.

### VI. PLAINTIFFS' MOTION FOR ENFORCEMENT OF ORDER TO COMPEL

Due to my resolution of the defendants' motion for summary judgment in favor of the defendants, the plaintiffs' motion to enforce this court's April 14, 1995, order compelling the defendants to produce plaintiffs' medical records for their inspection will be dismissed as *moot.*

### VII. CONCLUSION

After reviewing all of the evidence presented by the parties and giving all reasonable inferences in favor of the plaintiffs, I find there are no genuine issues of material fact for trial and that the defendants are entitled to judgment as a matter of law. In my opinion, a reasonable jury could not return a verdict in favor of the plaintiffs, and the defendants are entitled to summary judgment. *See Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. at 2510. Based on the reasons set forth in this decision, the plaintiffs' motion for summary judgment on the issue of liability will be denied.

### ORDER

Therefore, IT IS ORDERED that the plaintiffs' motion to conform their complaint to the evidence be and hereby is granted.

IT IS ALSO ORDERED that the plaintiffs' motion to take judicial notice be and hereby is denied.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment be and hereby is granted.

IT IS FURTHER ORDERED that the plaintiffs' motion for summary judgment be and hereby is denied.

IT IS FURTHER ORDERED that the plaintiffs' application for injunctive and declaratory relief be and hereby is dismissed as moot.

IT IS FURTHER ORDERED that the plaintiffs' request for an order sanctioning the defendants by compelling them to produce certain records be and hereby is dismissed as moot.

IT IS FURTHER ORDERED that the clerk of court be and hereby is directed, pursuant to Rule 58, Federal Rules of Civil

Procedure, to enter judgment dismissing this action, with prejudice.