Kevin KIRSCH, Plaintiff-Appellant,†
Omowale Nubian BLACK, James Griffin, Plaintiffs-Co-
Appellants,

Dempsie COBURN, Plaintiff,

v.

Jeffrey P. ENDICOTT, Defendant-Respondent.

Court of Appeals

*No. 94–0359. Submitted on briefs March 8, 1995.—Decided
April 18, 1996.*

(Also reported in 549 N.W.2d 761.)

†Petition to review denied.

For the plaintiffs-appellants, Kevin Kirsch, Omowale Nubian Black, James Griffin, the cause was submitted on the brief of *Kevin Kirsch*, pro se, of Waupun.

For the defendant-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, with *Robert D. Repasky*, assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

GARTZKE, P.J.   Kevin Kirsch, Omowale Nubian Black, James Griffin and Dempsie Coburn appeal from a judgment dismissing their action brought against Jeffrey Endicott under 42 U.S.C. § 1983 for injunctive relief and damages. The plaintiffs were inmates at the Columbia Correctional Institution (CCI) when Endicott was the warden. The plaintiffs allege in substance that by subjecting them to a "Management Continuum" policy while they were segregated from the general prison population, the warden deprived them of liberty and property without due process of

law, contrary to the Fourteenth Amendment of the United States Constitution.

The parties define the issues differently. We deem the dispositive questions to be whether Management Continuum made changes in the conditions of the plaintiffs' confinement such as to deny them due process; whether it deprived them of a liberty interest and a property interest arising out of the Wisconsin Administrative Code and the Inmates Handbook; and, whether it violates a due process right to the same meals the general prison population receives rather than bag lunches and to use a pen rather than a soft crayon-type writing instrument. We resolve these issues against the plaintiffs and affirm, all without reaching the issues raised by the warden's answers, such as qualified immunity.

The essential facts are undisputed. Management Continuum is an additional form of segregation of disruptive inmates already in a disciplinary segregation unit. Before describing it further, we discuss its context: adjustment, program and controlled segregation.

Adjustment segregation is imposed on an inmate following a finding of guilt for a major offense. WIS. ADM. CODE § DOC 303.69(1). A "major offense" is a violation of a disciplinary rule for which a major penalty (adjustment or program segregation or loss of good time or extension of the inmate's mandatory release date) may be imposed. WIS. ADM. CODE § DOC 303.68(1)(a) and (c). Adjustment segregation may not exceed eight days. Only one person may be kept in the segregation cell and each cell must meet certain minimum standards with regard to a mattress, lights, toilet facilities and ventilation and heating. WIS. ADM. CODE § DOC 303.69(1). The inmate must be provided

upon request with items ranging from clothing and bedding through hygiene materials and paper, stamps and pens. WIS. ADM. CODE § DOC 303.69(2). Provisions are made for the inmate's having material relating to legal proceedings, visits, telephone calls, mail, showers, etc. WIS. ADM. CODE §§ DOC 303.69(2)-(6).

Program segregation is imposed only for a major offense. It may not exceed the period provided in WIS. ADM. CODE § DOC 303.84, a schedule of penalties for listed offenses. The maximum period is 360 days. WIS. ADM. CODE § DOC 303.84 also fixes the maximum number of days of good time which can be lost or by which mandatory release can be extended for each listed offense. The conditions of confinement under program segregation are essentially the same as those under adjustment segregation. WIS. ADM. CODE §§ DOC 303.70(2)-(9).

Controlled segregation may be imposed on inmates already in segregation for seriously disruptive or destructive behavior toward the contents of the segregation cell or himself or herself. WIS. ADM. CODE § DOC 303.71(1). It is used when it has been impossible to control an inmate and is not intended as punishment. WIS. ADM. CODE § DOC 303.71, Appendix. A shift supervisor may place an inmate in controlled segregation if a conduct report is written for the conduct giving rise to its use.

Controlled segregation lasts no more than seventy-two hours, but the security director may extend it for uncontrollable behavior. WIS. ADM. CODE § DOC 303.71(1). The cell must contain a clean mattress, sufficient light to read by, sanitary toilet and sink, and adequate ventilation and heating. WIS. ADM. CODE § DO C 303.71(2). The inmate must be provided with adequate clothing, essential hygiene supplies upon

request and the same diet provided to the general prison population. If the inmate acted in a disruptive manner, close control of his property is to be maintained. WIS. ADM. CODE § DOC 303.71(3). Inmates in controlled segregation may not have visits. WIS. ADM. CODE § DOC 303.71(4). The inmate receives credit toward his or her term of adjustment or program segregation. WIS. ADM. CODE § DOC 303.71(9).

In February 1992 the warden issued a memorandum entitled "Management Continuum in Segregation for Certain Disruptive Behaviors" to CCI shift supervisors. Before the memorandum was issued, Kirsch and other inmates had engaged in systematic destruction of the segregation cells. The destruction included breaking heads off the sprinkler system in the cells, flooding cells, damaging cell windows and breaking sinks and toilets. In the twelve months preceding the memorandum, eighty-one cases of segregation cell damage occurred involving some twenty-seven inmates and over 100 other instances when inmates covered doors and windows of segregation cells to prevent their observation by staff.

Management Continuum has provisions common to first offenders, repeat offenders, frequent offenders, and extreme offenders, and then distinguishes between their conditions of confinement.[1] The common provisions are that an order must be issued to the inmate to cease destructive behavior, staff is to use force consistent with WIS. ADM. CODE § DOC 306.06, staff must write a conduct report, and staff must place

---

[1] First, repeat, frequent and extreme offenders are not defined. The context shows that Management Continuum applies to destructive or dangerous disciplinary rule violations. Classifying an offender as "repeat," "frequent" or "extreme" is left to the discretion of staff.

the inmate in control status with the basic necessities consistent with WIS. ADM. CODE § DOC 303.71 (mattress, blanket, clothing—t-shirt, shorts, pants and socks, officer controlled hygiene items).

Management Continuum requires that repeat offenders be put in a "hardened cell," one from which prison authorities remove metal and hard plastics so that the inmate cannot dig or scratch items in it. The inmate's pencils and pens are replaced with a crayon or another soft writing object kept under the control of an officer. Hygiene items that could be used to dig or scratch items in the cell are removed, and issued to the inmate twice a day. The inmate remains in these conditions for at least thirty days. Frequent offenders are subject to the same conditions, except that they must keep their shoes outside their door, and they may receive paper products in quantities equal to what is kept in a shoebox. One afternoon or evening a week, the inmate has access to his paper products. Extreme offenders are subject to the same conditions as frequent offenders, except that the inmate's cell is subject to shake down, the inmate is subject to strip search every other day, and more frequent shake downs and strip searches may occur on the direction of the security director.

■ We reject the plaintiffs' contention that before an inmate may be subjected to a Management Continuum, the prison authorities must comply with the minimum procedural due process requirements established in *Wolff v. McDonnell*, 418 U.S. 539 (1974). Because administrative segregation is the type of confinement inmates should "reasonably anticipate" during incarceration, they have no liberty interest protected by the Due Process Clause itself in not being

placed in administrative segregation. *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). The same applies to adjustment or program segregation.

The Wisconsin Supreme Court has held on the basis of *Hewitt*, as well as *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 462 (1989) ("a State creates a protected liberty interest by placing substantive limitations on official discretion"), that an inmate's interest in not being placed in adjustment or program segregation is constitutionally protected. *Irby v. Macht*, 184 Wis. 2d 831, 841, 522 N.W.2d 9, 13 (1994). The *Irby* court also concluded that before an inmate may be placed in adjustment or program segregation and subjected to the possible loss of good time which attends a guilty finding for an offense which merits such segregation, the minimum due process requirements established by the *Wolff* court must be satisfied. 184 Wis. 2d at 839, 522 N.W.2d at 12.

However, the minimum due process required before an inmate may be placed in segregation is the same as when an inmate is placed in Management Continuum. Management Continuum applies to an inmate already in adjustment or program segregation. The inmate's right to due process applied to the proceedings which resulted in his segregation. Whether he received the process due him at that stage is not an issue at the Management Continuum stage. The inmate's loss of good time resulted from the finding at the earlier stage of his guilt on a major offense. The conduct report which must be issued before Management Continuum may be imposed can result in the inmate's loss of more good time on a finding of guilt,[2] but Management Continuum itself does not

___

[2] *See* WIS. ADM. CODE §§ DOC 303.66, 303.67 and 303.84 (governing conduct reports and major violations).

affect good time. And although Management Continuum requires that the inmate be placed in control status, controlled segregation, itself, does not affect good time.

Nor does Management Continuum cause so major a change in the conditions of an inmate's confinement as to implicate a liberty interest protected by the Due Process Clause. Management Continuum, as the term itself implied, continues the management of an inmate in controlled segregation, itself a continuation of an inmate's adjustment or program segregation. It is a matter of what an inmate should, as the *Hewitt* court held, "reasonably anticipate." *Hewitt*, 459 U.S. at 468. Segregated inmates should reasonably anticipate that they may be subjected to sanctions, should they engage in the type of activity meriting Management Continuum.[3] Those sanctions are not so different from

---

[3] The provision in Management Continuum for strip searches of an "extreme offender" does not change our conclusion. A strip search is one which the inmate is required to remove all clothes, and his body and body cavities may be visually inspected. WIS. ADM. CODE § DOC 306.16(1)(b). Strip searches are not so unusual to be outside the reasonable expectations of an incarcerated inmate. A strip search may be conducted before an inmate leaves or enters a maximum or medium security institution or the grounds of a minimum security institution, before an inmate enters or leaves a segregation unit or changes status within the segregation unit, before and after a visit to an inmate, during a periodic search and lock down, at the direction of the shift supervisor who is satisfied that there are reasonable grounds to believe that the inmate possesses contraband, and in the absence of the shift supervisor if a staff member is satisfied that there are such grounds. WIS. ADM. CODE § DOC 306.16(3). A written report or written log entry of certain strip searches must be filed with the security director, and the report must state detailed

program segregation as to deprive the inmate of due process.

We conclude that an inmate in adjustment or program segregation has no due process right not to be subjected to Management Continuum. Accordingly, plaintiffs were not entitled to the minimum due process procedures required in *Wolff v. McDonnell*, 418 U.S. 539 (1974), before being placed in Management Continuum.

We reject the plaintiffs' contention that they have a state created liberty and property interest arising out of the Management Continuum memorandum, and the handbook issued to inmates in segregation. They argue that the Management Continuum "contains both the subjective predicates and mandates a particular outcome sufficient to create a protected liberty interest in not being subjected to the Management Continuum . . . ." They also argue that the handbook (which covers a host of procedures applicable to inmates in segregation) states the specific conditions of confinement that an inmate in adjustment or program segregation is entitled to and that the language in the handbook creates a liberty or property interest in those conditions which Management Continuum cannot modify without complying with minimum due process. Plaintiffs rely on *Hewitt v. Helms*, 459 U.S. 460 (1983),

---

information. WIS. ADM. CODE § DOC 306.16(6). Before a strip search is conducted the inmate must be informed that it is about to occur, the nature of the search, and the place where the search is to occur. WIS. ADM. CODE § DOC 306.16(8). The Management Continuum memorandum provides that the inmate must be informed in writing of the reasons for a strip search, a requirement over and above those in WIS. ADM. CODE § DOC 306.16.

and *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454 (1989), for their contentions.

The basis for these contentions has been eliminated by *Sandin v. Conner*, — U.S. —, 115 S.Ct. 2293 (1995). The *Sandin* court held that while states may create liberty interests which are protected by the Due Process Clause, those

> interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin*, — U.S. at —, 115 S.Ct. at 2300 (citations omitted). For that reason, the courts are no longer required to engage in "the search for a negative implication from mandatory language in prison regulations" previously mandated by *Hewitt v. Helms*, and *Kentucky Dept. of Corrections v. Thompson*. *Sandin*, — U.S. at —, 115 S.Ct. at 2300.

When in *Irby v. Macht*, our state supreme court employed the analysis then required by *Hewitt v. Helms*, and *Kentucky Dept. of Corrections v. Thompson*, that was the law. "Nevertheless, we may deviate from Wisconsin Supreme Court precedent when that precedent is based on an interpretation of federal law that is no longer in accord with subsequent decisions by the United States Supreme Court." *State v. Whitaker*, 167 Wis. 2d 247, 261, 481 N.W.2d 649, 655 (Ct. App. 1992).

We turn to the "bag lunch" restrictions. The Management Continuum memorandum makes no

reference to "bag lunches." The plaintiffs' complaint and supplemental complaint do not refer to bag lunches. Kirsch asserts, however, in one of his affidavits that inmates subjected to Management Continuum do not receive regular prison meals served on a tray but instead receive bag lunches served cold and containing reduced food items. Griffin asserts in his affidavit that when he was placed in Management Continuum, he received a reduced diet bag lunch.

Plaintiffs' contentions regarding bag lunches center on WIS. ADM. CODE §§ DOC 303.69(2), 303.70(2) and 303.71(3), which provide that inmates in segregation must receive the same diet provided to the general population. Plaintiffs assert that they are therefore entitled to the same hot meals the general prison population receives. The warden contends that the bag lunches served to inmates in Management Continuum are nutritionally equal to the meals served to the general population, and the administrative rules require no more. We do not enter the discussion. A violation of an administrative rule does not, in and of itself, implicate the constitution. *Compare Smith v. Shettle*, 946 F.2d 1250, 1254 (7th Cir. 1991) (due process not violated when prison officials failed to review periodically inmates' status in administrative segregation as required by state statute and regulations). *See also Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1081 (7th Cir. 1987) (due process does not require states to follow their own procedures, if there is no underlying property interest; constitution does not guarantee that states will follow their own law).

The difference between hot meals served to the general population in a prison and cold meals served in a bag is not so far removed from what an inmate in segregation should "reasonably anticipate," *Hewitt*, 459 U.S. at 468, as to violate the Fourteenth Amendment. Control of inmates' diet is within the discretion of the prison officials, assuming the diet is adequate. *Burgin v. Nix*, 899 F.2d 733, 734 (8th Cir. 1990).

Plaintiffs contend that the bag lunches served them in Management Continuum are not as nutritional as the meals served to the general prison population. If the difference in nutrition is so great as to result in nutritional deficiency, the Eighth Amendment prohibition against cruel and inhumane treatment may have been violated. That amendment imposes duties on prison officials to ensure that inmates receive adequate food, clothing, shelter and medical care. *Farmer v. Brennan*, 511 U.S. —, —, 114 S.Ct. 1970, 1976 (1994). However, plaintiffs allege only a violation of due process, not of the Eighth Amendment. The adequacy of their diet in Management Continuum is therefore not an issue in their suit against the warden.

Plaintiffs assert that because Management Continuum "is a form of disciplinary punishment," they are entitled to the protections of due process. We disagree. The *Sandin* court rejected the proposition "that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation." — U.S. at —, 115 S.Ct. at 2300. The court said that "punishment of incarcerated prisoners . . .

717

effectuates prison management and prisoner rehabilitative goals." *Sandin,* — U.S. at —, 115 S.Ct. at 2301. "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Sandin* , — U.S. at —, 115 S.Ct. at 2301. Thus, even if Management Continuum is imposed for punitive purposes (a point we do not decide), plaintiffs are not entitled to the protections of the Due Process Clause.

Finally, we reject the argument that the warden has denied the plaintiffs in Management Continuum their due process right of access to the courts when furnishing them only with crayons rather than pens. Prisoners have a constitutional right of access to the courts, and, if indigent, must be provided at state expense with paper and pen to draft legal documents. *Bounds v. Smith,* 430 U.S. 817, 824 (1977). A pen, as such, need not be provided. So long as plaintiffs are furnished with writing instruments, they are not denied their right of access to the courts. *See Kirsch v. Smith,* 894 F.Supp. 1222, 1230 (E.D. Wis. 1995) (prison policy restricting inmate to use of ink tube which restricts but does not completely deprive inmate of ability to draft documents, does not deny inmate meaningful access to the courts). Being restricted to the use of crayons does not completely prevent an inmate from drafting legal documents. In this very proceeding, we earlier accepted for filing by these same plaintiffs a petition for a supervisory writ apparently written, according to the petition, with a "plain pen insert" without a full size pen.[4]

---

[4] We denied the petition because it sought an order directed to the warden, and we lack supervisory authority over the department of corrections.

Because we conclude that the warden through Management Continuum did not deny plaintiffs their constitutional right of due process, we affirm the judgment dismissing their action.

*By the Court.*—Judgment affirmed.

SUNDBY, J. (*concurring in part; dissenting in part*). Plaintiffs, who are inmates or former inmates of Columbia Correctional Institution (CCI), bring this 42 U.S.C. § 1983 civil rights action against Warden Jeffrey Endicott. They allege that Endicott violated their liberty interest under the Due Process Clause of the Fourteenth Amendment by enforcing a "Management Continuum" policy promulgated June 1, 1992. The policy reads:

> Due to recent incidents that have required repeated cell entries and/or use of chemical agents on inmates already in Control Status who have used property to obstruct the view into their cell, effective immediately, *all* inmates placed in Control Status will be limited to a mattress and undershorts. They will be allowed only this amount of property so long as they are in that status. These actions are being taken to protect both staff and inmates. This memo supersedes all other memos from this office or the Security Director on this subject.

Inmates Omowale Nubian Black and James Griffin have been subjected to this policy and Kevin Kirsch alleges that he experiences severe anxiety at the likely prospect of being subjected to the policy. The policy is contrary to WIS. ADM. CODE § DOC 303.71 which provides that inmates in controlled segregation shall be provided adequate clothing, essential hygiene

719

supplies and the same diet provided to the general prison population. It is undisputed that the Management Continuum policy permits CCI to impose on inmates in controlled segregation restrictions not permitted under § DOC 303.71. It is also undisputed that such restrictions are imposed on inmates who have not used property to obstruct the view of their cells, and are imposed without notice and opportunity to be heard.

The inmates allege that the Management Continuum policy violates their liberty interests created by § DOC 303.71. They argue that this rule created in them a protected liberty interest. *See Hewitt v. Helms*, 459 U.S. 460, 469 (1983). However, in *Sandin v. Conner*, 115 S. Ct. 2293, 2299-2300 (1995), the Court rejected the *Hewitt* approach because it involved the courts excessively in the day-to-day management of prisons. The Court said:

> The time has come to return to the due process principles we believe were correctly established and applied in *Wolff*[1] and *Meachum*.[2] Following *Wolff*, we recognize that states may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at 2300 (citations omitted; footnote omitted).

[1] *Wolff v. McDonnell*, 418 U.S. 539 (1974).

[2] *Meachum v. Fano*, 427 U.S. 215 (1976).

Section DOC 303.71 imposes restraints on an inmate in temporary lockup or segregation of any kind "who exhibits loud and seriously disruptive . . . or destructive behavior . . . ." However, the rule does not create an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." In other words, controlled segregation under § DO C 303.71 does not impose restraints or conditions of restraint beyond those the inmate and society could reasonably expect. In fact, the inmate is treated almost embarrassingly humanely: a clean mattress, a sanitary toilet and sink, adequate ventilation and heating, adequate clothing and bedding, hygienic supplies, writing and mailing materials, holy books, legal research materials, visitation and telephone privileges, mail, and the same diet as the general prison population.

Further, an inmate may not be placed in controlled segregation except upon notice and opportunity to be heard. In contrast, the stark, barbarous conditions of Management Continuum are imposed without considerations of guilt and without opportunity to be heard. Inmates now placed in controlled segregation suffer the deprivations of Management Continuum solely because of the misbehavior of inmates who preceded them in controlled segregation.

The Warden justifies stripping inmates of the basic necessities as a "management" necessity and not punishment. He does not explain, however, how restricting the inmate to bag lunches furthers the "management" objective of preventing inmates from obstructing the view of their cells. How does stripping the inmate of shoes, socks, trousers, and an undershirt further that objective? Clearly, the "Management" Continuum contains a punitive as well as a

management component. Under the *Sandin* test, we must ask whether the Warden's Management Continuum subjects inmates to "atypical, significant deprivation[s] in which a state might conceivably create a liberty interest." 115 S. Ct. at 2301. The answer to that question, according to the *Sandin* Court, is found by comparing inmates subject to disciplinary segregation and those in the general prison population. *Id.*

In *Sandin*, the inmate claimed that he was denied procedural due process because he was placed in segregation without having an opportunity to present witnesses at his disciplinary hearing. The committee found him guilty of misconduct and placed him in disciplinary segregation. The Court looked at the seriousness of the consequences of the committee's decision and decided that the inmate's confinement "does not present a dramatic departure from the basic conditions of [the inmate's] indeterminate sentence." *Id.* Therefore, no constitutional liberty interest was implicated. The Court said:

> Based on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing [the inmate] there for 30 days did not *work a major disruption in his environment.*

*Id.* (emphasis added).

Plainly, the Warden's Management Continuum works a major disruption in an inmate's environment, even one who has been placed in controlled segregation pursuant to due process disciplinary procedures. If freedom from such a disruption in environment is not protected by § DOC 303.71, it is protected by the Due Process Clause itself.

722

I have no problem concluding that before an inmate may be subjected to the conditions which potentially exist under the Warden's Management Continuum, he must be given the protection of substantive and procedural due process. However, I conclude that two of the inmates, Kevin Kirsch and Omowale Nubian Black, have failed to present evidence that they are presently subject to the Continuum or have been in the past. They seem to seek declaratory relief that the Management Continuum is *per se* unconstitutional. That is not the case.

Kirsch's affidavit speaks to the effect of the Management Continuum on other inmates. Black's affidavit speaks only to the Warden's counterclaim. Only Griffin's affidavit presents evidence as to the effect of the Continuum upon him. He deposes that on "numerous occasions" he has been subjected to the Management Continuum policy: He has been placed in a cell with only a mattress and undershorts; he has been denied additional clothing and bedding; and he has suffered from the cold which has caused him lack of sleep, anger and depression. For purposes of the summary judgment dismissing Griffin's complaint, these allegations must be accepted. I conclude that Griffin has stated a claim and is entitled to summary judgment that the Warden's Management Continuum policy has been imposed against him in violation of his right to due process under the Fourteenth Amendment.

I express no opinion as to whether an inmate subjected to § DOC 303.71 may have his placement reviewed in an appropriate state-law action. Plaintiffs have raised only constitutional issues and they are clearly sufficiently well versed in the law that we need not construe their pleadings to raise state-law questions.

For these reasons, I dissent from our decision insofar as we affirm the order dismissing Griffin's claim.